FRANK REYNOLDS, as Receiver of RICHARD WORTHINGTON, Respondent, *v*. THE ÆTNA LIFE INSURANCE COMPANY, Respondent, JOSEPH J. LITTLE, as Receiver of the WORTHINGTON COMPANY, and MARGARET WORTHINGTON, Appellants, Impleaded with JENNIE DOMAN et al.

1. RECEIVER IN SUPPLEMENTARY PROCEEDINGS — TITLE TO JUDGMENT DEBTOR'S LIFE INSURANCE POLICIES. The title of a receiver in proceedings supplementary to execution, to policies of insurance upon the life of the judgment debtor, payable to the debtor or his estate and owned by the debtor at the time of the appointment of the receiver, although their existence was then unknown to the latter, is superior to any right or interest in the policies, of a subsequently appointed receiver of a cor-

poration controlled by the debtor, to whom the policies were fraudulently · assigned and who acquired no title in the policies by virtue of his appointment, although premiums thereon had been paid by his corporation, but before its insolvency and not in fraud of creditors.

2. Receiver's Title not Divested by Debtor's Death. The title of a receiver in supplementary proceedings to policies upon the life of the judgment debtor, payable to his estate and owned by the debtor at the time of the receiver's appointment, is not divested or affected by the death of the debtor.

3. Receiver's Right in Policies not Limited to Surrender Value. The right acquired by a receiver in supplementary proceedings, in policies upon the debtor's life, owned by the debtor, is not limited to their surrender value; and if the policies are kept in force by the insured, the receiver is entitled, on their becoming due, either by the expiration of their term or by the death of the insured, to the amount due upon them, not exceeding the amount of the judgment represented by him.

4. Modification of Judgment by Appellate Division. Case presented where the Appellate Division was justified in modifying a judgment against a life insurance company, in an action brought by a receiver in supplementary proceedings against it and parties whom it had previously interpleaded, by providing that the insurance company should not, by reason of the order in the interpleader action and payment of money under it, be compelled to pay the amount of its policies in suit twice, without the right to recover the amount wrongfully received by the other defendants in the interpleader action.

5. Res Adjudicata. A judgment is not conclusive in a second action unless the same question was material and at issue in a former suit of which the court had competent jurisdiction, and the subsequent action is between the same parties or their privies.

6. Order on Petition of Receiver of Corporation as to Judgment Debtor's Life Policies not Conclusive against Insurance Company or Receiver in Supplementary Proceedings. An order, made on the petition of the receiver of a corporation which had been controlled by a deceased intestate, settling all litigation with the widow of the deceased, directing her to deliver to such receiver policies held by her upon the life of the deceased, and directing the receiver to collect the policies and pay a portion of the proceeds to the widow, followed by a delivery of policies owned by the deceased at his death, and payable to his estate, is not conclusive as to the title to the policies and the right to their proceeds either as against the insurance company or against a receiver who had been appointed in supplementary proceedings against the insured, where neither the insurance company nor the receiver in supplementary proceedings was a party to the order, although the settlement covered thereby was submitted to the creditor on whose judgment the receiver in supplementary proceedings was appointed, and was approved by him, but under the supposition that the policies were payable to the widow and not to the debtor's estate.

7. ORDER IN INTERPLEADER NOT A BAR AGAINST INSURANCE COMPANY OR THIRD PERSON IN ACTION BY LATTER. Where the issue in an action of interpleader brought by the insurance company having a fund in its hands claimed by such corporation receiver and the widow of the insured, was as to which of the defendants should have the fund which was admitted to be due upon policies in the possession of one of them, with no issue or claim that the policies belonged to any other person, an order determining that as between the defendants one of them was entitled to the money does not constitute a bar as against the insurance company, or against a third person, such as the receiver of the insured in supplementary proceedings, in an action brought by such third person against the parties to the interpleader, in which subsequent action the question was whether the plaintiff owned the policies, and, if he did, whether the defendants · in the interpleader should refund the money which they had obtained wrongfully.

8. REIMBURSEMENT OF INSURANCE COMPANY AGAINST SECOND PAYMENT OF POLICIES. Nor are such orders on the petition of the corporation receiver and in the action of interpleader a bar to the right of the court to adjudge, in the subsequent action brought by the receiver in supplementary proceedings, that the defendants who were parties to the interpleader should pay the amount wrongfully received by them to the insurance company in case it should be required to pay its policies a second time.

*Reynolds* v. *Ætna Life Ins. Co.*, 28 App. Div. 591, affirmed.

(Argued October 18, 1899; decided November 21, 1899.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered May 6, 1898, which modified and, as modified, affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

On March 2nd, 1888, Moses Bulkley and others obtained a judgment in the Supreme Court against Richard Worthington for $3,592.34, which still remains unpaid.. On the 9th day of the same month an order in proceedings supplementary to execution was duly made appointing the plaintiff receiver of all the property and estate of Richard Worthington, who duly qualified as such receiver. At that time Worthington held two policies of insurance upon his life in the Ætna Life Insurance Company of $5,000 each, payable twenty years after their date if the insured was alive, or to his estate if deceased. These policies were issued in 1882, one in May and the other in August.

Previous to January 26th, 1893, a corporation known as the Worthington Company was in existence. Upon that day proceedings were instituted by its trustees for its dissolution upon the ground of its insolvency, and such proceedings were had that Joseph J. Little was appointed, first, temporary receiver, and in October, 1893, permanent receiver of such company, and has since acted as such.

Richard Worthington continued to hold, and remained in possession of the two policies mentioned until about the 2nd day of April, 1894, when he and his wife assigned all their right, title and interest therein to the defendant Doman as trustee. The latter was not, in fact, a trustee for any one, unless for Richard Worthington, and the assignment was made in fraud of his creditors and to place the policies beyond their reach. It was also without consideration.

Richard Worthington died intestate October 7th, 1894, and his wife, the defendant Margaret Worthington, was duly appointed and qualified as his administratrix. After such appointment the defendant Doman assigned and transferred the policies in suit to Margaret, with the intent to place them and the money due thereon beyond the reach of the plaintiff and the creditors of Richard, and with the intent to delay and defraud such creditors. This transfer was also without consideration.

On the 8th of December, 1894, Margaret Worthington personally and as administratrix, with the intent to hinder, delay and defraud the creditors of Richard, made an assignment of the policies to the defendant Little as receiver, upon condition that he would pay her personally thirty-seven and one-half per cent of the proceeds thereof. That assignment was fraudulent as to the creditors of Richard, in breach of the trust reposed in Margaret as such administratrix, and was accepted by Little with knowledge of the preceding assignments made by Richard and Margaret to Doman and by Doman to Margaret, and also with knowledge of the appointment of the plaintiff as receiver of Richard.

The policies in question were the property of Richard

Worthington when the order appointing the plaintiff receiver was made. Both before and after his appointment, the premiums on the policies were paid out of the corporate funds of the Worthington Company and charged to Richard Worthington or the defendant Margaret Worthington. When the premiums were paid the Worthington Company was not insolvent, nor were the payments fraudulent as to its creditors. All the directors and stockholders of the corporation assented to the use of the money for paying such premiums, and acquiesced in such disposition of it. The Worthington Company was controlled and managed by Richard as his own property. The defendant Little has no right to the policies in question, or either of them, as such receiver, in law or equity, as against the plaintiff.

On April 16th, 1894, Little, as receiver, served upon the defendant insurance company a written notice, in which he, as such receiver, claimed to be the equitable owner of the policies in question, and entitled to receive the money due or to become due thereon, for the reason that the company had paid the premiums. Subsequently he commenced an action against the insurance company and Richard and Margaret Worthington, wherein he demanded judgment decreeing that he was the owner and entitled to the possession of the policies in question, and entitled to all money due or to become due thereon. The insurance company answered, and Richard and Margaret appeared. While that action was pending, and on the 7th of October, 1894, the death of Richard Worthington occurred. Thereupon the policies became payable, and the action by Little, as receiver, was discontinued. Several actions against Margaret and Richard Worthington were brought by Little, as receiver, to obtain the money employed in the payment of such premiums. Margaret then claimed to be entitled to the proceeds of the policies in question.

On December 1, 1894, an order was made by the Supreme Court on petition of Little as receiver, with notice to the attorney-general and to the attorneys who had appeared for the creditors of the corporation, authorizing Little as such

receiver to accept from Margaret, in compromise and settlement of all pending and future litigation, the delivery of the policies in question and all others held by her upon the life of Richard Worthington, and directing the receiver to take the necessary steps to collect the amount due thereon and to pay Margaret Worthington thirty-seven and one-half per cent of the amount thus received. This settlement was carried out and the policies were delivered.

Prior to the making of that order and while the matters were under negotiation, this settlement and the action of the receiver Little were submitted to one of the firm of Bulkley, Dunton & Co., the judgment creditors in the action in which the plaintiff was appointed receiver, and were approved by him. When thus approved, the firm was not and no member of it was aware of the fact that the policies were made payable to Richard Worthington or his estate, but supposed they were payable to Mrs. Worthington.

After the policies were delivered to Little, proofs of death were filed by him with the insurance company. Just prior to the expiration of the ninety days when their payment would become due, and on the 18th of March, 1895, the insurance company commenced an action in the nature of an interpleader against the defendants in the present action, alleging the issuing of the policies to Richard Worthington, his death, the filing of the written notice by Little as receiver, the assignments of such policies by Richard and Margaret, and alleged that it made no claim to the amount due upon the policies; that it was indifferent as between the defendants, and praying judgment that it might be given leave to bring the amount due thereon into court to be disposed of as the court might direct. In that action Little, as receiver, answered, setting forth his appointment and alleging that as such receiver he was entitled to the money due under the policies. The other defendants also answered, admitting the right of the defendant Little to their proceeds. After the service of these answers, upon notice, an order was made in the interpleader action reciting these facts and directing the insurance company to pay the

sum of $13,563 to the chamberlain of the city of New York; that it received $35 for its costs, and that upon such payment the company be released from all liability to any of the defendants in such action. It was further ordered that the chamberlain pay the amount so deposited to the defendant Little as receiver. Upon that order the insurance company paid the chamberlain that sum as directed, accepted from the defendant Little the delivery and return of the policies, and they were canceled and discharged. The insurance company never appealed from this order nor asked for a resettlement of it, but acquiesced therein.

In compliance with the order of the court the defendant Little paid to Margaret Worthington three-eighths of the amount received on these policies. The plaintiff gave no notice in writing or otherwise either to the insurance company or any of the other defendants of his claim to such policies or the proceeds thereof, until the bringing of this action. At the time of the payment of the proceeds of the policies into court and the payment by Little as receiver to Margaret Worthington, under such order, the insurance company had knowledge of the plaintiff's claim to the avails of such policy. The plaintiff, since his appointment as receiver has never paid any of the premiums due upon the policies. Indeed, he did not know of their existence.

The claim to the proceeds and policies made by the defendant Little was based upon the grounds stated in his notice, and was sought to be maintained in hostility to all other claims thereto upon the part of the other persons claiming them. His action as receiver in making the settlement with Richard and Margaret Worthington, accepting the delivery from them of the insurance policies, receiving the amount thereof, and in allowing three-eighths of it to Margaret, was under the sanction of the orders of the Supreme Court, which had jurisdiction of the parties and subject-matter, and which orders had never been revoked or modified.

This action was commenced April 11th, 1895, by the service of a summons and complaint upon the insurance company,

81

and they were on that day exhibited to the attorney and counsel for Little and Margaret Worthington, who were respectively notified of the claim made by the plaintiff. Subsequently, with the consent of the attorneys for the defendants in the interpleader action, the court made an order requiring the insurance company to pay the proceeds of the policies in question to the chamberlain of the city of New York, and that the chamberlain pay the same, less his commission, to Little as receiver of the Worthington Company. When the money was paid by the insurance company to the chamberlain, by the chamberlain to Little, and by Little to the attorney for Margaret, Little and Margaret both had knowledge of the facts that this action had been commenced and that a receiver had been appointed of the property of the assured, and they contemplated the possibility that the creditors of Richard would interfere with this settlement and sought thereby to prevent or avoid it. Little, as receiver, did not obtain the money upon these policies or either of them upon his independent claim as receiver of the Worthington Company.

On the trial of this action the plaintiff abandoned his claim to a third policy which was payable upon the death of Richard Worthington to his wife, and which through various assignments became vested in Little as receiver before the commencement of this action. The foregoing are substantially the facts found by the trial court.

Upon these facts the Special Term dismissed the action as against the defendant Glover, and held that the issue of fraud raised between the defendants by the supplemental answer of the insurance company had not been sustained by the evidence; that it was not germane to the issue raised by the complaint; that however decided it could not affect the plaintiff's rights as against the defendants to have his claim to the amount of the policy adjudged good; that the plaintiff's claim to the money due upon the policies to the amount of the judgment upon which the plaintiff was appointed receiver was good over the claims of any other defendant, and that he was entitled to recover the same of the insurance company.

Upon appeal to the Appellate Division, the decision of the Special Term was affirmed so far as it held the defendant company liable to pay the plaintiff the amount due upon the judgment under which he was appointed. It further held that, as the court, when it acted upon the petition for its consent to the compromise between Little and Mrs. Worthington, had no knowledge that the policies in suit were payable to Richard's estate, the suppression of that fact, with the additional fact that the money paid to the defendants Little and Mrs. Worthington was paid in fraud of the creditors of Richard, authorized the court to hold that it was not bound by that order and that it should have been set aside so far as the rights of the plaintiff were concerned, and that as he was not a party to that action he was not bound by that order. It also held that, notwithstanding the order which was made in the interpleader action for the payment of the money to the defendants Little and Mrs. Worthington, still, as it belonged to the plaintiff, as representative of the creditors, those parties should be required to repay the amount, either to the plaintiff or to the insurance company. It further held that the question raised by the answer of the insurance company, in pursuance of which it sought to avoid the payment of its liability a second time, was germane to the action and should have been determined by the trial judge, and that, as the defendants Little and Worthington received that money with the knowledge that they were not entitled to it, the plaintiff, or in the event that the insurance company paid the plaintiff, it had the right to recover the amount of them upon the ground that its receipt, with a knowledge of the fact that it did not belong to them, rendered the proceeding fraudulent as to the creditors of Richard and as to the insurance company. It likewise held that the money in the hands of the defendants Little and Worthington, which was the avails of these policies, was held by them as trustees for the judgment creditors of Richard and could be reached by the plaintiff.

The Appellate Division thereupon decided that the judgment of the court below as to the insurance company should

be affirmed, and that on the appeal of the insurance company and the plaintiff against the other defendants the judgment should be so modified as to direct them to account for and pay to the plaintiff the money wrongfully received by them as against the plaintiff, and so as to provide that if the amount due the plaintiff was again paid by the insurance company it should receive of the defendants Little and Worthington the money wrongfully received by them to the amount so paid, and as modified that the judgment should be affirmed.

*James M. Fisk* for appellant Little.    Plaintiff, as receiver in supplementary proceedings, never became vested with the right to the money, and is not entitled to receive the same or any part thereof. (*Ward* v. *Petrie*, 157 N. Y. 301; 13 Am. & Eng. Ency. of Law, 650, 651.)    The plaintiff has no claim to any part of the sum received by receiver Little from the insurance company.    The money voluntarily paid to receiver Little as claimant by the insurance company cannot be and is not impressed with any trust in favor of the plaintiff. (*Patrick* v. *Metcalf*, 37 N. Y. 332; *Butterworth* v. *Gould*, 41 N. Y. 450; *Hathaway* v. *Town of Homer*, 54 N. Y. 655; *Peckham* v. *Van Wagenen*, 83 N. Y. 40; *Hathaway* v. *Town of Cincinnatus*, 62 N. Y. 434.)    As to the defendant the Ætna Life Insurance Company and the defendants Little, as receiver, and Margaret Worthington, the insurance company has no right to claim the return of the moneys paid by it to receiver Little, and is estopped by the former proceedings from now making such claim. (*Ashton* v. *City of Rochester*, 133 N. Y. 187; *Vil. of Port Jervis* v. *F. Nat. Bank*, 96 N. Y. 557; *Lorillard* v. *Clyde*, 122 N. Y. 41; *A. B. N. Co.* v. *N. Y. E. R. R. Co.*, 129 N. Y. 252; *House* v. *Lockwood*, 137 N. Y. 268; *Stannard* v. *Hubbell*, 123 N. Y. 520; *Hynes* v. *Estey*, 116 N. Y. 501; *Genet* v. *D. & H. C. Co.*, 113 N. Y. 475.)    The Appellate Division had no right to modify or reverse that part of the judgment favorable to the defendant Little and direct the entry of a judgment against him. (*Snyder* v. *Seaman*, 157 N. Y. 449; *Guernsey* v. *Miller*, 80 N. Y. 181; *Foot* v. *Æ. L. Ins. Co.*, 61 N. Y. 571.)

*William C. Davis* for Margaret Worthington, appellant.
The order in the interpleader action under which the moneys
were paid is still in full force, unmodified and unreversed in
any respect. The Appellate Division would seem to have not
only disregarded this order but to have actually found and
held that the court had no jurisdiction to make it. (*Benedict
v. Arnoux,* 154 N. Y. 724; *New v. Vil. of New Rochelle,* 158
N. Y. 41.) The most that can be claimed vested in the plaintiff
receiver was the paid-up or surrender value of the policies at
the time of the filing of the order in supplementary proceed-
ings, and even that is doubtful. (Code Civ. Pro. §§ 2468,
2469; *Columbian Inst. v. Creegan,* 11 Civ. Pro. Rep. 87;
*Masten v. Amerman,* 51 Hun, 244; *Dubois v. Cassidy,* 75
N. Y. 298; *Ward v. Petrie,* 157 N. Y. 301; *Nat. Bank v.
Bussing,* 147 N. Y. 665.) That the order in the interpleader
case is in full force, unreversed and unmodified, is a fact about
which there is no controversy. What effect shall be given to
that order in this case is a question of law for this court to
determine. (*Griggs v. Day,* 158 N. Y. 1.)

*Frederic A. Ward* for Reynolds, respondent. The title
to the policies in suit vested in the plaintiff receiver upon his
appointment. (*Bostwick v. Menck,* 40 N. Y. 383; *Powell v.
Waldron,* 89 N. Y. 328; *Platt v. Jones,* 96 N. Y. 29; *Krat-
zenstein v. Lehman,* 19 App. Div. 228; *Trepagnier v. Rose,*
18 App. Div. 393; *Metcalf v. Del Valle,* 64 Hun, 245;
*Mandeville v. Avery,* 124 N. Y. 377; *Stephens v. Perrine,*
143 N. Y. 476; *Stokes v. Amerman,* 55 Hun, 178.) The lien
created by the appointment of the receiver survived the death
of Richard Worthington, and if Margaret Worthington had
claimed these policies as his administratrix she would have
taken them charged with this lien. (*Brown v. Nichols,* 42
N. Y. 26; *Bank of Amsterdam v. Shuler,* 35 N. Y. Supp.
171.) The legal title in these policies having been vested in
the plaintiff receiver, and the defendant Richard Worthing-
ton, by the terms of the order appointing the receiver, having
been enjoined from making any disposition thereof, all trans-

fers by him were fraudulent as to creditors, and void as to the plaintiff. (*Reynolds* v. *Æ. L. Ins. Co.*, 6 App. Div. 263.) The defendant Little has no right whatever to the policies in question, and no claim upon their proceeds in law or in equity. (*Little* v. *Garabrant*, 153 N. Y. 661 ; *Buckley* v. *Little*, 154 N. Y. 742.) The claim asserted by appellant. Little, that plaintiff cannot recover the money "voluntarily paid" to receiver Little, by the Ætna Insurance Company, because there is no privity of contract between Little, receiver, and the plaintiff receiver, is clearly untenable. (*Griggs* v. *Day*, 158 N. Y. 17.) The claim of appellants, that they are protected in their wrongful possession of the money in suit by the order of Judge BEACH in the interpleader action, is untenable. (*Webb* v. *Buckelew*, 82 N. Y. 555 ; *Riggs* v. *Pursell*, 74 N. Y. 380 ; *Hathaway* v. *Town of Cincinnatus*, 62 N. Y. 445 ; *Hovey* v. *Elliott*, 118 N. Y. 142 ; *Hathaway* v. *Town of Homer*, 5 Lans. 267.) The appeal to this court should be dismissed. (Code Civ. Pro. §§ 190, 191.)

*William S. Bennet* for insurance company, respondent. The Appellate Division had the right to modify the judgment of the Special Term. (Code Civ. Pro. § 1317 ; *Benedict* v. *Arnoux*, 154 N. Y. 724 ; *Snyder* v. *Seaman*, 157 N. Y. 449.) The conclusion reached by the Appellate Division was right. (*Little* v. *Garabrant*, 90 Hun 404.) The order of April 11, 1895, is no bar to the relief granted by the Appellate Division. (*Hovey* v. *Elliott*, 118 N. Y. 124 ; *Buel* v. *Boughton*, 2 Den. 91 ; *Hathaway* v. *Town of Cincinnatus*, 62 N. Y. 447 ; *Hathaway* v. *Town of Homer*, 5 Lans. 267 ; *Goldstein* v. *Lawrence*, 20 N. Y. Supp. 616 ; *Smith* v. *Grant*, 3 N. Y. S. R. 255 ; *Matter of H. P. S. F. Assn.*, 129 N. Y. 288.) The court has no jurisdiction to hear this appeal. (Code Civ. Pro. §§ 190, 191.)

MARTIN, J. That the defendant Little, as receiver of the Worthington Company, acquired no title to the policies in question, or to the money due or paid thereon by virtue of his appointment, has already been decided. (*Little* v. *Garabrant*,

90 Hun, 404; affirmed, 153 N. Y. 661; *Bulkley* v. *Little,* 154 N. Y. 742; 9 App. Div. 627.)

Therefore, if he possessed any right to the money due or paid under the policies, it was acquired from and through the assignment by Richard Worthington to the defendant Doman, the assignment by Doman to Margaret Worthington, and the assignment by Margaret to him. But as these assignments have been found to be fraudulent as to the creditors of Richard Worthington, it is obvious that Little obtained no title under them as against the plaintiff. It must, therefore, be assumed, in the further discussion of the questions involved, that Little, as receiver, had no title to the policies in question or the money paid thereon, which could be defended as against the plaintiff, or which entitled him to enforce them against the insurance company in defiance or in diminution of the plaintiff's rights.

The plaintiff having been duly appointed as receiver of the property of Richard Worthington in proceedings supplementary to execution long before Little's appointment and while the judgment debtor was the owner of the policies, his title was superior to any right or interest Little may have obtained by virtue of the assignments by which it was sought to transfer the policies to him. Upon the plaintiff's appointment as receiver, the property of the judgment debtor vested in him from the time of filing the order appointing him. (Code of Civil Procedure, § 2468.) By virtue of his appointment he represented the judgment debtor, and could bring any action relating to the property rights thus acquired. He also represented the judgment creditors to an extent necessary to bring actions in the nature of a creditor's bill to set aside fraudulent transfers. (*Porter* v. *Williams,* 9 N. Y. 142, 149; *Underwood* v. *Sutcliffe,* 77 N. Y. 58; *Mandeville* v. *Avery,* 124 N. Y. 376, 385; *Ward* v. *Petrie,* 157 N. Y. 301, 307.)

As between the parties the plaintiff not only acquired the legal title to all the personal property of the debtor which was then in his possession, but also to all his personal property which was in the possession of others at the time of the service of the order in supplementary proceedings. Thus,

when Little was appointed, and also when he took the assignment of these policies, the plaintiff held the legal title to them, although their existence was unknown to him and they were not in his possession.

The appellants contend that upon the death of Richard Worthington the amount which became payable upon these policies passed to his legal representative, and the plaintiff's right to recover it was thus extinguished. The lien upon equitable assets, acquired by the commencement of an action in the nature of a creditor's bill, is not extinguished by the death of the defendant, even before the appointment of a receiver, but it survives his death and is a lien upon such assets in the hands of his administrator. (*Brown* v. *Nichols,* 42 N. Y. 26; *First Nat. Bank* v. *Shuler,* 153 N. Y. 171.) The provisions of the Code relating to proceedings supplementary to execution furnish a substitute for the creditor's bill as formerly used, and the service of the order under those provisions takes the place of the commencement of a suit under the old system, and gives the judgment creditor the priority of a vigilant creditor and a lien upon the equitable assets of the debtor. (*Lynch* v. *Johnson,* 48 N. Y. 27; *Duffy* v. *Dawson,* 22 C. P. R. 235.) In this case a receiver was appointed anterior to the death of the insured, and hence it is manifest that the title remained in the plaintiff and was not divested or affected by his death.

A further contention is that the plaintiff acquired only the surrender value of the policies, and at most can recover but the surrender value at the time of his appointment. We think this contention cannot be sustained. What the plaintiff acquired was the legal title to the policies and all the rights of the judgment debtor under them at the time of the plaintiff's appointment. While the insured had the right to discontinue the payment of the premiums upon the policies as they became due and thus let them lapse, still he was not required to do so. He also had the right to continue paying the premiums and thus keep the policies in force until their maturity. Having kept them in force, the plain-

tiff, in whom the title rested, was entitled to the amount due upon them, not exceeding the amount of the debt he represented. He could not have delivered the policies to the company and accepted their surrender value, as the knowledge of their existence had been kept from him by the judgment debtor, who voluntarily continued to pay the premiums and thus kept them in force. Under these circumstances, the title continued in the plaintiff, and he was entitled to receive the full amount which should become due upon the policies, either by expiration of the term of twenty years, or by the death of the insured, so far as the amount was necessary to pay the judgment he represented. After the appointment of the plaintiff the judgment debtor held the possession of these policies subject to the plaintiff's title, and had no right to transfer or appropriate them to his own use. He was at most a mere bailee or trustee of them for the plaintiff, and as such he could not have legally collected the amount due if he had lived until the time the policies became payable. He had no title, and, consequently, would have had no right to recover thereon. The sale or transfer by him amounted to a conversion of the property for which he was liable to the plaintiff for its value at the time of the conversion, including any increased value that had arisen after the plaintiff obtained his title. The rule that a trustee or bailee is liable to the owner for property in his hands or wrongfully transferred by him, is based upon a rule of property, and the title not being affected by such increase the owner may claim it, and its increased value as well. (*Silsbury* v. *McCoon*, 3 N. Y. 379; *Newton* v. *Porter*, 69 N. Y. 133; *Kinsey* v. *Leggett*, 71 N. Y. 387, 395; *Guckenheimer* v. *Angevine*, 81 N. Y. 394, 396; *Matter of Cavin* v. *Gleason*, 105 N. Y. 261.)

These considerations lead to the conclusion that the plaintiff was entitled to recover of the insurance company the amount due upon the policies, and the proceeds having been received by the other defendants, that he was entitled to recover of them as well.

This conclusion is further controverted by the appellants

82

upon the ground that the orders made on the petition of Little for a settlement with Mrs. Worthington and in the interpleader suit brought by the defendant company, conclusively estopped the court from holding, and the insurance company from claiming, that the other defendants are liable to the plaintiff for the amount due upon the policies, or for sufficient to pay the judgment represented by him. We think this contention should not be sustained. It is manifest from the findings of the trial court that those orders did not affect or bind the plaintiff, who was not a party to that action. Hence, so far as he is concerned, obviously he possesses the right to collect upon the policies in question an amount sufficient to pay the judgment in the action in which he was appointed.

The defendants, cther than the insurance company, persistently insist that although the court may have had power to direct a judgment in favor of the plaintiff against the insurance company for the amount due upon the judgment represented by him, it had no authority to modify the judgment appealed from so as to permit or direct that the insurance company, if compelled to pay its policies twice, should recover the amount of the second payment from the other defendants in the action by whom the amount due thereon had been wrongfully received.

It seems clear that the insurance company ought not to be required to pay the amount of its policies twice. It is equally apparent that the defendants Little and Worthington are in possession of money which does not belong to them and which should be applied to the payment of the plaintiff's claim. Therefore, unless the court below was without power or authority to modify the judgment in the manner it did, its decision ought to be sustained. When the order in the interpleader action was made and the money paid to the chamberlain by the attorney for the insurance company, he knew that the plaintiff claimed these policies and the money due thereon. The evidence shows that he did not consent to the order, and tends to show that he protested against it. Moreover, at the time he had no knowledge of the fraud through which the

defendants Little and Worthington obtained their pretended title to the policies, and he may well have supposed they were the owners of them. The proof also tends to show that, when the money was paid by the company, its attorney was assured by the defendants Little and Worthington that the plaintiff's claim was invalid.

Under these circumstances, can we say that the Appellate Division, which is authorized to review the facts as well as the law, was not justified in holding that, upon the facts found by the court below, the order of the court in the interpleader action and the payment of the money under it were so far induced by fraud as to justify it in deciding that the insurance company should not, by reason of the order and payment, be compelled to pay the amount of the policies twice, without the right to recover the amount wrongfully and unlawfully received by the defendants Little and Worthington? We think not.

We think it cannot be correctly said that either the order in the interpleader action, or the order approving the settlement between Little and Mrs. Worthington, was an adjudication of the rights of the parties to this suit which barred or concluded the court in determing the equitable and legal rights of the parties. Obviously, the order approving the settlement had no binding effect upon the parties to this action, as it related only to an agreement between Little and Mrs. Worthington.

It must be regarded as the established law of this state that a judgment is not conclusive in a second action unless the same question was at issue in a former suit of which the court had competent jurisdiction, and the subsequent action is between the same parties or their privies. The conclusive character of a judgment as a bar extends only to the identical issues which were tried in the former action. They must be the same in each action, not merely in name, but in fact and in substance, and the party seeking to avail himself of a former judgment as conclusive evidence or as a bar in a subsequent action, must show affirmatively that the question involved in the second was material and determined in the former, as a former judgment would not operate as an estoppel

in a subsequent action as to immaterial and unessential facts, even though put in issue and directly decided. It is final only as to facts litigated and decided, which relate to the issue, and the determination of which was necessary to the determination of that issue. (*Palmer* v. *Hussey*, 87 N. Y. 303 ; *Bell* v. *Merrifield*, 109 N. Y. 202 ; *Hymes* v. *Estey*, 116 N. Y. 501 ; *Lewis* v. *O. N. & P. Co.*, 125 N. Y. 341 ; *Rose* v. *Hawley*, 133 N. Y. 315 ; *House* v. *Lockwood*, 137 N. Y. 259 ; *Ward* v. *Boyce*, 152 N. Y. 191, 201.)

In the *Palmer* case it was held that the conclusive character of a judgment as a bar extends only to identical issues, and they must be such not merely in name, but in fact and substance. The *Bell* case is to the effect that, while a valid judgment upon a question directly involved in a suit is conclusive evidence as to that question in another suit between the same parties, although for a different cause of action, that it must appear, either by the record in the former suit or by extrinsic evidence, that the precise question was raised and determined therein, and the burden of establishing it rests with the party who endeavors to make use of the judgment as conclusive evidence upon that point.

In *Hymes* v. *Estey* there was a claim that a former judgment was conclusive as to the existence of a public way. In the former action the question was whether the public had a right to a strip of land for a street, and in the second it was whether the land was used as a street or visible as such. It was there held that the question in the second case was not within the purview of the former or essential to be determined, and, hence, the judgment was not conclusive.

The *Lewis* case establishes the principle that, where a judgment may have proceeded upon two or more distinct facts, the party seeking to avail himself of it in a subsequent action as conclusive evidence as to one of those facts must show affirmatively that the former decision was based upon that fact. In the *Rose* case it was held that, as the second cause of action accrued after the former judgment, it was not a bar to a recovery in the second.

In *House* v. *Lockwood* it was held that a judgment does not operate as an estoppel in a subsequent action between the parties as to immaterial and unessential facts, even though put in issue by the pleadings and directly decided. It is simply final as to facts litigated and decided therein, having such a relation to the issue that their determination was necessary to the determination of that issue. In the *Ward* case it was held that before the record of a former judgment between the same parties would be conclusive it must appear that the court in the first action had jurisdiction, and the same fact involved in the second action was at issue in the former and was material and determined.

In *Matter of Flushing Ave.* (98 N. Y. 445) an order was made denying a motion to set aside for irregularity the report of commissioners of estimate and assessment in proceedings for a local improvement. Pending an appeal a second motion was made upon substantially the same papers, but assailing the constitutionality of the act under which the improvement was made. The second motion was denied and the constitutionality of the act affirmed in the Court of Appeals. It was there held that the second motion was no bar to a subsequent review of the first and that the parties were not precluded from examining the question of regularity.

In *Avila* v. *Lockwood* (98 N. Y. 32), where a suit was brought to set aside a sale as fraudulent and to recover the property sold, the defendant, a corporation, disposed of it pending the litigation, and when judgment was rendered ordering it to deliver the property, the defendant was unable to comply with the judgment, and it was held that such a judgment was no bar to a subsequent action by the plaintiff's assignee to recover from the defendant's agents the proceeds of the property sold pending the original suit and received by such agents.

Applying the principles of these decisions to the question under discussion, it is quite obvious that neither of the orders relied upon by the appellants effected an estoppel as against either the plaintiff or the insurance company. The parties were not the same, nor was the plaintiff a privy of either of

the parties to the interpleader suit.  In that suit none of the
questions involved in this was determined.  There the insur-
ance company came into court and alleged that it had a fund
in its hands to which there were two claimants, that it was
indifferent between them, and asked the court to decide which
was entitled to it.  One of the defendants alleged that he was
the owner as against the others and this they admitted.  Upon
that state of the pleadings the order was made.  There was
no adjudication that the fund in fact belonged to Little or to
Worthington, or to both as against the claim of the true
owner.  Nor did the insurance company admit that it belonged
to either.  It merely alleged that both claimed it and asked
the court to determine who, as between the then parties,
should have it.  The only question decided in that case was
that as between the defendants in that action Little was
entitled to the money due on the policies.  Did the insurance
company by this action admit or estop itself from denying
that the policies belonged to either when the true owner
appeared, established his ownership and sought to enforce his
right?  We think neither of the orders relied upon by the
appellants in any way estopped or prevented the court from
awarding the relief granted by the Appellate Division, espe-
cially in view of the facts found and the obvious fraud of the
appellants in obtaining from the insurance company the
money that justly and legally belonged to plaintiff.

The issue in the interpleader suit is in no way involved in
this.  In the former it was as to which of the defendants
should have a fund which was admitted to be due upon the
policies, which were in the possession of Little.  In that case
there was no issue, claim or pretense that the policies belonged
to the plaintiff in this action or any other person than Little.
No such question was involved.  Indeed, no question as to
the title of the policies was litigated.  In this case the title
was the only issue litigated, and the question was whether the
plaintiff owned the policies, and, if he did, whether the
defendants Little and Worthington should refund the money
which they obtained wrongfully upon the claim that they

were the owners and entitled to the money payable thereon. These issues were new, have arisen since the former order was made, and were not tried or determined in the interpleader action. There was no decision in the former suit that the defendants Little and Worthington were entitled to the policies as against any other claimant, which was binding ether upon the plaintiff or the insurance company upon a second trial.

Under these circumstances, and in view of the authorities cited, it is obvious that neither the order in the interpleader action nor the order permitting the settlement between Little and Mrs. Worthington was a bar to the right of the plaintiff to recover against these defendants, or to the right of the court to adjudge that Little and Mrs. Worthington should pay the amount wrongfully received by them to the insurance company in case it should be required to pay its policies a second time. That question was raised by answer of the insurance company, was germane to this action and was properly determined by the Appellate Division.

The judgment should be affirmed, with costs.

All concur (VANN, J., in result).

Judgment and order affirmed.